## SUDDS v. GILLIAN

[152 N.C. App. 659 (2002)]

ROLAND FORD SUDDS, Plaintiff-appellant v. PHILLIP RAY GILLIAN, JEROME DOUGLAS EADES, ATLANTIC INDEMNITY COMPANY, and HORACE MANN INSURANCE COMPANY, Defendant-appellees

No. COA01-998

(Filed 3 September 2002)

### 1. Release— mutual mistake—not shown

The trial court did not err by granting summary judgment for defendants in an action seeking reformation of a release following an automobile accident where plaintiff did not assert the existence of any fact or term in the release that was incorrect, omitted in error, or misunderstood, and did not allege that either party misunderstood the general meaning or effect of the release.

### 2. Release— mutual mistake—silence during negotiations— no misrepresentation

The plaintiff in an action seeking reformation of a release was not entitled to summary judgment against a defendant who did not negotiate with him or respond to his inquiries. Plaintiff alleged only that this defendant did not respond to his letters, but did not allege any fact misrepresented by defendant's silence on which plaintiff relied to his detriment.

### 3. Trials— refusal to review memorandum of law—harmless

The trial court's failure to review plaintiff's written memorandum of law was harmless where the court correctly granted summary judgment for defendant.

Judge GREENE concurring in the result.

Appeal by plaintiff from order entered 23 March 2001 by Judge L. Oliver Noble, Jr., in Catawba County Superior Court. Heard in the Court of Appeals 14 May 2002.

*Wyatt Early Harris & Wheeler, by Stanley F. Hammer and William E. Wheeler, for plaintiff-appellant.*

*Caudle & Spears, P.A., by Eric Allen Rogers, for defendant-appellees Phillip Ray Gillian, Jerome Douglas Eades, and Atlantic Indemnity Company.*

*Parker, Poe, Adams & Bernstein L.L.P., by Regina J. Wheeler and John Beyer, for defendant-appellee Horace Mann Insurance Company.*

SUDDS v. GILLIAN

[152 N.C. App. 659 (2002)]

BIGGS, Judge.

Plaintiff appeals from summary judgment entered in favor of defendants. For the reasons that follow, we affirm.

This appeal arises from a three-car collision occurring on 18 July 1996. Plaintiff and Terry McGinness were passengers in a car driven by Brian Shook, which was traveling west along Rural Road 1003 in Catawba County, North Carolina. A second vehicle, driven by Alfred Coe, was traveling east on the same road. When Coe stopped to make a left turn, he was struck from behind by a third car, owned by Jerome Eades and driven by Phillip Gillian. Coe was killed in the collision, and his car was propelled into the opposite lane of traffic where it struck Shook's vehicle. Plaintiff sustained injuries in the accident.

At the time of the accident, Gillian and Eades were insured under an automobile liability policy issued by Atlantic Indemnity Company, with liability limits of $50,000 per accident. Shook's policy was issued by Nationwide Insurance Company, Inc., and included $100,000 in underinsured motorist coverage (UIM), which extended to plaintiff as a passenger in Shook's car. Plaintiff also had UIM coverage, under a policy issued by Horace Mann Insurance Company.

On 22 July 1996, plaintiff, Shook, and McGinness retained counsel to represent them jointly in connection with the accident. On 1 April 1998, Atlantic tendered $23,500 to the three to divide, and on 24 September 1998, Nationwide tendered $76,500 to the three to divide. On 5 October 1998 plaintiff's counsel wrote to Andrew Holquist, a claims adjuster with Atlantic, on behalf of plaintiff, Shook, and McGinness. Counsel asserted in the letter that his paralegal had spoken with Holquist by phone, and had also left several voice mail messages, repeatedly asking Holquist to send the "Atlantic Casualty checks and releases," but that Holquist had failed to do so. The letter directed Holquist to "please forward the liability payment checks and releases to my office *immediately.*" In response, Atlantic forwarded the releases, and plaintiff signed a "Release of All Claims" on 6 November 1998, releasing Gillian, Eades, Atlantic, and "all other persons, firms, corporations, associations or partnerships" from all claims arising out of the accident. A month later, plaintiff's counsel wrote another letter to Holquist, in which he enclosed "the three original Release of All Claims which [had] all been signed by [his] clients, Brian Shook, Roland Sudds [plaintiff], and Terry McGinness respectively."

On 30 September 1999, plaintiff filed suit against defendants, alleging that the money he had received from Atlantic and Nationwide was insufficient compensation for his injuries. Plaintiff sought reformation of the release "to allow Plaintiff to pursue his claim against Gillian and Eades pursuant to . . . Plaintiff's [UIM] policy with Horace Mann[.]" He alleged that the release had been executed upon a "mutual mistake of fact." Gillian, Eades, and Atlantic answered on 23 November 1999, raising the release as a bar to plaintiff's claim for UIM coverage from Horace Mann, and denying the existence of a mutual mistake. Horace Mann filed an answer on 13 December 1999, also pleading the release as a bar to plaintiff's claims. Defendants filed a motion for summary judgment on 1 March 2001, which was granted on 23 March 2001. Plaintiff appeals from the trial court's order granting summary judgment to defendants.

## Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). "The moving party bears the burden of establishing the lack of a triable issue of fact." *Sykes v. Keiltex Industries, Inc.*, 123 N.C. App. 482, 484-85, 473 S.E.2d 341, 343 (1996) (citing *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E.2d 350 (1985)). Furthermore, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted).

----

[1] Plaintiff argues first that the trial court erred by granting summary judgment. He asserts specifically that there was a genuine issue of material fact regarding whether plaintiff executed the release pursuant to a mutual mistake of fact, and thus whether the release was subject to reformation. We disagree.

"A release is a 'formal written statement reciting that the obligor's duty is immediately discharged.' " *Best v. Ford Motor Co.*, 148 N.C.

App. 42, 45, 557 S.E.2d 163, 165 (2001) (quoting E. Allan Farnsworth, *Contracts* § 4.24 (2d ed. 1990)), *aff'd*, 355 N.C. 486, 562 S.E.2d 419 (2002) (citation omitted). A release against the principal tortfeasor (negligent driver) also acts to release the UIM insurance carrier, as the liability of a UIM insurance carrier is derivative of the principle tortfeasors' liability. *Grimsley v. Nelson*, 342 N.C. 542, 548, 467 S.E.2d 92, 96 (1996) (signing of release against tortfeasor releases UIM carrier as a matter of law due to "derivative nature of the insurance company's liability"); *Spivey v. Lowery*, 116 N.C. App. 124, 127, 446 S.E.2d 835, 838, *disc. review denied*, 338 N.C. 312, 452 S.E.2d 312 (1994) ("whether or not plaintiff intended to release the UIM carrier is irrelevant . . . [if] plaintiff intended to release the tortfeasor, the UIM carrier is released as well").

An otherwise valid release may be reformed, or re-written, if it was executed pursuant to a mutual mistake of fact. *Metropolitan Property and Cas. Ins. Co. v. Dillard*, 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (defining reformation as an "equitable remedy used to reframe written documents" when, because of a mistake common to both parties, "the written instrument fails to embody the parties' actual, original agreement"). The party seeking reformation must establish both (1) the existence of a mutual mistake of fact, and (2) a resultant failure of the document as executed to reflect the parties' intent. *Suarez v. Food Lion, Inc.*, 100 N.C. App. 700, 705, 398 S.E.2d 60, 63 (1990) (citation omitted).

A mutual mistake exists only when both parties "labor[] under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." *Metropolitan Property and Cas. Ins. Co. v. Dillard*, 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (reforming insurance policy where both parties intended to insure plaintiff's house, but both were mistaken as to the street address of the property). However, the unilateral "mistake of only one party to the instrument, if such mistake was not induced by the fraud of the other party, affords no ground for relief by reformation." *Light v. Equitable Life Assur. Society*, 56 N.C. App. 26, 32, 286 S.E.2d 868, 872 (1982) (citing *Parker v. Pittman*, 18 N.C. App. 500, 197 S.E.2d 570 (1973)). *See also Mock v. Mock*, 77 N.C. App. 230, 334 S.E.2d 409 (1985) (no grounds for reformation when parents mistakenly included former daughter-in-law's name on deed, where no evidence exists that both parties intended for her name to be omitted). Further, "reformation on grounds of mutual mistake is available only where the evidence is

clear, cogent and convincing." *Durham v. Creech*, 32 N.C. App. 55, 59, 231 S.E.2d 163, 166 (1977).

In the case *sub judice*, plaintiff signed a release that expressly releases Gillian, Eades, and Atlantic from further liability in regards to the accident, in exchange for his share of Atlantic's policy limit. In addition, the document releases "all other persons, firms, corporations, associations or partnerships." Horace Mann was plaintiff's UIM insurance carrier; therefore, plaintiff's execution of a general release of Gillian and Eades generally serves as a matter of law to release Horace Mann, irrespective of plaintiff's intentions.

Plaintiff, however, alleges that the release was executed pursuant to a mutual mistake of fact, and should therefore be reformed. In support of this contention, plaintiff's attorney executed an affidavit alleging that: (1) the letter requesting a release was written by his paralegal; (2) he "did not personally review the letter prior to its mailing to Holquist;" (3) he "did not review" the release before it was forwarded to his client to be signed; and (4) he did not review the signed release for "many months" until "it was ultimately brought to [his] attention." Plaintiff essentially alleges that his counsel mistakenly requested the release on his behalf, mistakenly directed plaintiff to execute the release, and mistakenly returned it to Atlantic, and asserts that these circumstances demonstrate that "[counsel's] request for 'liability payment checks and releases' is a mistake which warrants reformation." Defendants argue that the affidavit alleges only unilateral error, and does not provide grounds for reformation. We agree with defendants.

Plaintiff does not assert the existence of any fact or term in the release that is incorrect, was omitted in error, or whose legal import was misunderstood by both parties. Nor does he allege that either party misunderstood the general meaning or effect of the release. We conclude that plaintiff has alleged only his unilateral mistakes, and that, viewing the evidence in the light most favorable to plaintiff, no genuine issue of fact exists as to whether the release was executed pursuant to a mutual mistake of fact.

Plaintiff also argues that the evidence raises a genuine issue of fact regarding whether the release as executed was contrary to the mutual intent of the parties. However, because we conclude plaintiff has not shown the existence of any mutual mistake of fact, we find it unnecessary to determine the parties' respective intentions with regard to the release. *See Suarez v. Food Lion, Inc.*, 100 N.C. App.

700, 705, 398 S.E.2d 60, 63 (1990) ("Equity will give relief by reformation only when a mistake has been made, and the written instrument, *because of the mistake,* does not express the true intent of both parties.") (emphasis added); *Parker v. Pittman,* 18 N.C. App. 500, 504, 197 S.E.2d 570, 573 (1973) ("If a [document] fails to express the true intention of the parties it may be reformed to express such intent only when the failure is due to the mutual mistake of the parties[.]").

We conclude that the evidence taken in the light most favorable to plaintiff fails to establish that the release was executed under a mutual mistake or misunderstanding regarding a material fact. This assignment of error is overruled.

[2] Plaintiff also argues that although he did not move for summary judgment, he is entitled to judgment in his favor as regards defendant Horace Mann. He contends that Horace Mann failed to negotiate with plaintiff or to respond to his inquiries, and therefore that "Horace Mann should be estopped to contest the reformation of the release." We disagree.

The doctrine of equitable estoppel is properly applied when "an individual . . . induces another to believe that certain facts exist and that other person rightfully relies on those facts to his detriment." *Bunn Lake Property Owner's Ass'n, Inc. v. Setzer,* 149 N.C. App. 289, 297, 560 S.E.2d 576, 582 (2002) (citation omitted). The trial court "may only grant a summary judgment motion based on the doctrine of estoppel '[w]here there is but one inference that can be drawn from the undisputed facts of a case.' " *Tuckett v. Guerrier,* 149 N.C. App. 405, 412, 561 S.E.2d 310, 314 (2002) (quoting *Keech v. Hendricks,* 141 N.C. App. 649, 653, 540 S.E.2d 71, 75 (2000)).

In the case *sub judice,* plaintiff alleges only that Horace Mann did not respond to plaintiff's letters informing it of his settlement negotiations with other insurers. However, plaintiff fails to assert the existence of any fact that Horace Mann allegedly misrepresented by its silence, upon which plaintiff relied to his detriment. This assignment of error is overruled.

[3] Finally, plaintiff argues that the trial court erred by failing to consider his written memorandum of law opposing the grant of summary judgment. Having determined that the trial court's ruling was legally correct, we necessarily determine that any error in the trial judge's failure to review plaintiff's memorandum, was harmless.

For the reasons discussed above, we conclude that plaintiff presented no grounds upon which to reform the release. We conclude that defendants were entitled to summary judgment as a matter of law, and, accordingly, the order of the trial court is

Affirmed.

Judge GREENE concurs with separate opinion.

Judge HUDSON concurs.

GREENE, Judge, concurring in the result.

While I agree with the majority that no genuine issue of fact exists with regard to the execution of the release under circumstances amounting to mutual mistake, I write separately to clarify when a release may be avoided.

A release can be avoided upon a "showing that its execution resulted from . . . mutual mistake of fact." *Cunningham v. Brown*, 51 N.C. App. 264, 269, 276 S.E.2d 718, 723 (1981). A mistake of fact occurs, affording reformation, if a release fails "to accomplish the result intended by both parties." *Id.* at 273-74, 276 S.E.2d at 726. Thus, if there is evidence permitting a finding that the parties to a release intended to release only certain parties, but the release actually contains "language contrary to this mutual agreement and intention in that by its terms it release[s] other[s]" as well, a genuine issue of fact is raised precluding entry of summary judgment. *Id.* at 273, 276 S.E.2d at 726.

In this case, viewing the evidence in the light most favorable to plaintiff, no genuine issue of fact exists as to whether the release was executed under circumstances amounting to a mutual mistake of fact. Indeed, the evidence shows the release was executed pursuant to plaintiff's unilateral mistake of fact.